**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IRA HOLTZMAN., individually and as the representative for a class of similarly-situated persons, | ) ) ) | |
| Plaintiff, | ) ) | No. 07 C 7033 |
| v. | ) ) | Hon. Judge Nordberg |
| CCH INCORPORATED, | ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff, IRA HOLTZMAN ("Plaintiff"), on behalf of himself and the class of similarly-situated persons (identified herein as the "Settlement Class"), respectfully requests that this Court enter an order giving final approval to the proposed Class Settlement Agreement (the "Settlement Agreement").  The parties' proposed order of *Final Approval of Settlement Agreement and Judgment* is attached hereto as <u>Exhibit A</u>.

**<u>Claims</u>**

1.     This case alleged that Defendant sent advertising faxes in violation of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  The TCPA provides statutory damages of $500 per violation, with trebling permitted if the violation is knowing or willful.  Defendant CCH Incorporated ("CCH") denied Plaintiff's allegations, but agreed to settle.

## Settlement

2.      The parties entered into a Settlement Agreement dated January 23, 2009 ("Settlement Agreement") and submitted it for preliminary approval to this Court on January 26, 2009.  (Doc. 22).  The settlement provides a common fund of $397,000.  The Court entered an order on January 28, 2009, preliminarily approving the settlement, ordering that the parties provide notice to the absent class members in accordance with the procedures proposed in the Settlement Agreement, and setting the matter for a hearing on final approval of the settlement on September 30, 2009, at 2:30 p.m.  (Doc. 26).

## Notice

3.      Pursuant to Paragraph 4.2 of the Settlement Agreement and as ordered by this Court on January 28, 2009, the Claims Administrator gave notice of the settlement to potential class members by direct mail or newspaper publication.  *See* Exhibit B (Declaration of Phillip A. Bock); Exhibit C (Declaration of Julie Shaw).  The direct mail notice was mailed to a list of 90 businesses targeted by Defendant's alleged junk faxes.  The publication notice was directed to any other persons who might have received an advertising fax from Defendant.  Finally, notice of the settlement was provided to the United States Attorney General and the attorneys general of all 50 states under the Class Action Fairness Act, 28 U.S.C. §1715.  Exhibit C.  Approximately $8,500.00 was spent providing notice.

4.     The settlement was well received by the Class.  No class member objected.  No class member opted out.  The Class Administrator received 199 claims from purported class members.  The Class Administrator approved 36 of these claims as valid and rejected 163 claims as invalid.  Only claims submitted in response to the newspaper publications were rejected and most of those came from prison addresses or residential addresses (many duplicated) not targeted by any of Defendant's alleged advertising efforts.  As explained below, rejected claimants were notified of the rejection and informed about how to challenge that decision, if they chose to do so.  As explained below, only two challenged the rejection.

## Distribution of Settlement Fund

5.     Defendant has agreed to pay fees and expenses to Class Counsel.  Class Counsel undertook the case on a contingency basis and recovered a pool of money to pay the Class.  The parties agreed in the Settlement Agreement that the Court should award Class Counsel fees equal to one-third of the common fund, or $132,333.33.  The Court should award this amount.  *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (addressing class counsel's fees in a common fund case explaining, "The typical contingent fee is between 33 and 40 percent…").  The Court should also award Class Counsel $1,000 as reimbursement for out-of-pocket expenses.  Defendant agrees to make these payments.

6.     Additionally, the Court should approve the parties'

3

agreement to pay Plaintiff an incentive payment of $5,000.00. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."). Here, the case could not have happened without Plaintiff's assistance as the case needed a class representative willing to step forward and assist in the prosecution of the case. Defendant agrees to make this payment.

7.     After deducting the cost of notice to the Class, fees and expenses approved above, the costs of administering the settlement, and the agreed incentive payment to Plaintiff, the Settlement Fund contains more than enough money to pay $500 to each class member who submitted a timely and valid claim form. Because the TCPA provides $500 per violation in statutory damages, each of these class members will receive a 100% recovery. If the Court approves the settlement, each of them will be mailed a check for $500 that, pursuant to the Settlement Agreement, will be void 91 days after issuance. (Doc. 24, ¶ 5.2).

## Cy Pres Awards

8.     As agreed in paragraph 2.1(e) of the Settlement Agreement, twenty-five percent (25%) of the net amount left in the Settlement Fund 92 days after the settlement's Effective Date will be distributed as a *cy pres* award to charities proposed by the parties and approved by the Court. (Doc. 24, p. 7)  The parties request that the Court permit the *cy*

*pres* awards to be made in equal one-third payments to: (1) the Chicago Bar Foundation (http://www.chicagobarfoundation.org);( 2) the Juvenile Diabetes Foundation (http://www.jdrf.org); and (3) the United Way of Metropolitan Chicago (http://www.uw-mc.org). All three are highly respected charitable organizations in this community and provide services to persons in need. The parties request Court approval of these awards.

### Petitions Challenging Denial of Claims

9. Pursuant to paragraph 5.2 of the Settlement Agreement (Doc. 24, p. 15), the Claims Administrator denied certain claims as invalid because the claimants did not appear to be legitimate members of the settlement class.

10. The Claims Administrator sent a postcard to persons whose claims were denied, informing them of the Claims Administrator's decision. Under paragraph 5.3 of the Settlement Agreement (Doc. 24, p. 15), denied claimants were informed about their right to submit a petition to this Court for review of that denial. The notice informed them that they must submit proof in support of the petition.

11. Only two persons whose claims were denied by the Claims Administrator submitted petitions for review of the denial. As set forth below, the Claims Administrator has conducted an investigation into the circumstances of those claims and the validity of the petitions. The Claims Administrator has concluded that neither of the two petitioners

5

has a legitimate claim, and recommends that the Court should reject
both petitions in its final order for the following reasons.

      12.    <u>Petition of Mark A. Brown filed July 6, 2009.</u>

      a.    Mr. Brown's petition is attached as <u>Exhibit D</u>.  Mr.
Brown offered no proof of any kind with his petition that he is a
proper member of the class. Mr. Brown's petition states that in
July 2009 he submitted copies of junk faxes he had received in
"late 2002." That is false because he submitted nothing except his
single page petition.

      b.    CCH has no record of ever sending any fax to Mr.
Brown.

      c.    Mr. Brown's petition lists a mailing address of P.O.
Box 14, Boise, ID 83707.  That is the mailing address for the Idaho
Department of Corrections.  According to public documents, Mr.
Brown is incarcerated for a variety of crimes, including crimes of
dishonesty.

      d.    The newspaper publication notice of the settlement
identified the class period as starting November 8, 2002.  Mr.
Brown (not coincidentally) says he received four junk faxes in "late
2002."

      e.    Mr. Brown claims that he received four CCH faxes in
"late 2002" for four completely disparate CCH products including
different industries – all of which were identified in the published

class notice: MediRegs is a medical product; Best Case Solutions products are for bankruptcy lawyers; Teammate is a computerized auditing product; and Sword is an operational risk management product for informational technology auditing. Mr. Brown would have had to have been in the four businesses, all at once, of medical regulation, bankruptcy law, financial auditing, and risk management, to have been on any CCH prospects lists for faxes promoting these four professional products.

    f.    Mr. Brown's petition lists four different fax numbers at which he claims to have received faxes. The area codes he listed for the fax numbers are in Connecticut, Idaho, the Houston area, and the Washington, D.C. suburbs of Maryland. The 713 area code he provided was a listing for Enron. The 301 listing is listed in 2002 as John Poindexter from the Iran-Contra controversy.

    g.    For all of the foregoing reasons, Mr. Brown's contention that he received faxes from CCH is not credible, and his petition should be denied.

13.    Petition of Daniel LaPlante filed on July 24, 2009 (Doc. # 28).

    a.    Mr. LaPlante's petition is attached as <u>Exhibit E</u>. He offered no proof of ever receiving any fax from CCH with his petition.

    b.    CCH has no record of ever sending any fax to Mr. Brown.

c.      Mr. LaPlante is incarcerated in the Massachusetts Correctional Institute - Norfolk, located at:  MIC Norfolk, PO Box 43, Norfolk, MA 02056 (phone 508-660-5900).  The petition lists that same address as Mr. LaPlante's address.

d.      According to public documents, Mr. LaPlante was indicted in 1988 in Massachusetts for first degree murder and convicted in 1989.  In October 1998, he was sentenced to three consecutive life sentences in October 1998. http://www.highbeam.com/doc/1P2-8085237.html.

e.      Mr. LaPlante has been incarcerated throughout the class period, did not receive any junk faxes from Defendant, and is not a class member.

f.      For the foregoing reasons, Mr. Plante's contentions that he received faxes are not credible, and his petition should be denied.

## **CONCLUSION**

WHEREFORE, the Court should enter the proposed *Final Approval of Settlement Agreement and Judgment* attached hereto as Exhibit A.

Respectfully submitted,

/s Phillip A. Bock
One of Plaintiff's Attorneys

Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500
bwanca@andersonwanca.com

Phillip A. Bock
James M. Smith
BOCK & HATCH, LLC.
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500
phil@bockhatchllc.com